Jimmy MALDONADO,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 88–1312.

United States Court of Appeals,
Tenth Circuit.

Jan. 4, 1990.

Margaret Moses Branch and Turner W. Branch, Albuquerque, N.M., for plaintiff-appellant.

Ruth Davey and Raymond Hamilton, Asst. U.S. Attys., William L. Lutz, U.S. Atty., Albuquerque, N.M., for defendant-appellee.

Before MOORE and BALDOCK, Circuit Judges, and DAUGHERTY, District Judge.*

DAUGHERTY, District Judge.

Plaintiff–Appellant Jimmy Maldonado appeals from the district court's ruling finding no liability on the part of the United States under the New Mexico Recreational Use Statute (NMRUS), NMSA § 17–4–7 (1978 Ann.)[1] for the plaintiff's injuries re-

---

* The Honorable Fred Daugherty, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. The New Mexico Recreational Use Statute reads:

A. An owner, lessee or person in control of lands who, without charge or other consideration paid to said landowners by the state, the federal government or any other governmental agency, grants permission to any person or group to use his lands for the purpose of hunting, fishing, trapping, camping, hiking, sightseeing or any other recreational use does not thereby:

(1) extend any assurance that the premises are safe for each purpose; or

(2) assume any duty of care to keep such lands safe for entry or use; or

(3) assume responsibility or liability for any injury or damage to, or caused by, such person or group;

(4) assume any greater responsibility, duty of care or liability to such person or group, than if such permission had not been granted and such person or group were trespassers.

B. This section shall not limit the liability of any landowner, lessee or person in control of lands which may otherwise exist by law for injuries to any person granted permission to hunt, fish, trap, camp, hike, sightsee or use the land for recreation in exchange for a consideration, other than a consideration paid to said landowner by the state, the federal government or any other governmental agency.

sulting from a diving accident. The plaintiff brought his case against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, et seq. We agree with the ruling of the trial court and affirm.

The plaintiff's accident occurred on July 28, 1984, at Soda Dam in Jemez Springs, New Mexico. The Soda Dam area is part of the Santa Fe National Forest, which is owned by the United States but is open to the public without charge for recreational purposes. The pool into which the plaintiff dove is created by the Jemez River when it flows through Soda Dam, a limestone rock formation, and falls about 23 feet. The force of the falling water creates a strong updraft in the pool and causes the water to be turbulent, which prevents the depth of the pool from being ascertained from the dam before a dive. According to the plaintiff, Soda Dam presents a unique danger because, while the surface level of the pool may appear constant, the actual depth varies. This variation in depth occurs when the pool fills with rocks and debris after a rainstorm and then is eventually cleaned out by the action of the river. Plaintiff Maldonado allegedly dove into the pool on a day in which the depth was relatively shallow and struck his head, resulting in quadriplegia. There were no warning signs regarding diving in the Soda Dam area.

The plaintiff brought his suit against the United States in 1986, alleging that the United States had negligently failed to warn of the dangerous conditions at Soda Dam. The United States defended on the grounds that it was exempt from liability under the NMRUS, which limits a landowner's liability for injuries that occur on property opened to the public for recreational purposes.

The trial court entered judgment for the defendant on that basis, holding that under NMRUS, plaintiff Maldonado would be defined as a trespasser and would therefore be owed no duty of care. The court went on to rule that even if a standard of care based on willful and wanton conduct was applicable under the statute, the defen-

dant's conduct in failing to warn did not rise to that level.

The United States' basis for invoking the protections of the NMRUS is the FTCA, which makes the government liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Otteson v. United States*, 622 F.2d 516, 517 (10th Cir.1980), citing *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

■ The plaintiff's first argument on appeal is that the NMRUS is not intended to apply to lands owned by the federal government and set aside for recreational purposes. The plaintiff asserts that "in creating public recreational areas, the government is unlike an individual who acts to allow the public access to private land. There are no individuals 'in like circumstances' as the government here." Plaintiff's Brief–in–Chief at 11.

Plaintiff admits, however, that many Courts, including this circuit, have applied similar state recreational use statutes to the United States. *Otteson v. United States*, 622 F.2d 516 (10th Cir.1980); *Klepper v. City of Milford, Kansas*, 825 F.2d 1440 (10th Cir.1987); *Cox v. United States*, 881 F.2d 893 (10th Cir.1989); *Proud v. United States*, 723 F.2d 705 (9th Cir.1984); and *Mandel v. United States*, 719 F.2d 963 (8th Cir.1983). Indeed, in the *Proud* case, the state of Hawaii attempted to specifically exclude the United States from the operation of its recreational use statute. The Ninth Circuit held that the protections of the recreational use statute would apply to the United States in any event, stating that "in enacting the FTCA, Congress—not the Hawaii legislature—determined the tort liability of the United States." *Proud*, 723 F.2d at 706.

The cases cited by the plaintiff in support of his position, *Miller v. United States*, 442 F.Supp. 555 (7th Cir.1978) and

*Stephens v. United States,* 472 F.Supp. 998 (C.D.1979), are unpersuasive because both courts refused to exempt the United States from liability because a private person under like circumstances would also not have been exempt. Both *Miller* and *Stephens* involved an Illinois law which provided specifically that all individuals who maintain their property for recreational use, and hold it out to the public on that basis, are subject to the provisions of the Illinois Recreational Area Licensing Act and are thus not entitled to the protections of the RUS. Both courts properly held the United States to the same standard that would have been applied to an individual, as required by the FTCA.

Thus, the plaintiff's contention that the United States should not be subject to the provisions of the NMRUS is against the clear weight of authority. The trial court's decision is in accordance with the law of this and the majority of other jurisdictions and should be affirmed.

■ After making its determination concerning the applicability of the NMRUS, the trial court used the New Mexico Uniform Jury Instructions (NMUJI) 1978 (Repl.1980), to decide that, under New Mexico law, the United States owed plaintiff Maldonado no duty of care because of his status as a trespasser. The NMUJI have been approved by the New Mexico Supreme Court, and trial courts in New Mexico are "bound to follow the Supreme Court's order requiring the use of uniform jury instructions." *Collins v. Michelbach,* 92 N.M. 366, 588 P.2d 1041, 1042 (1979). The NMUJI is to "be used unless under the facts or circumstances of the particular case the published UJI is erroneous or otherwise improper, and the trial court so finds and states of record its reasons." *Malczewski v. McReynolds Const. Co.,* 96 N.M. 333, 630 P.2d 285, 288 (N.M.App. 1981), citing New Mexico Rules of Civil Procedure, Rule 51(D). The jury instruction used by the Trial Court was NMUJI 13.7, which states that "[t]he owner of the land has no liability to a trespasser injured on his land from a natural condition of that land."

In regard to this instruction, the trial judge made a specific finding that the Soda Dam area was in a natural condition, despite argument by the plaintiff to the contrary. The plaintiff claimed at trial that because there was a degree of man-made diversion of water from the Jemez River for irrigation purposes, and because the United States maintained certain conveniences such as a parking lot and trash receptacles at the site, that the conditions at Soda Dam were no longer natural. The defendant responds that any diversion of water is at most negligible, and that the plaintiff's contention that the pool is artificially modified is simply not supported by the record. We find no abuse of discretion in the trial court's factual finding that Soda Dam was in a natural condition, and that finding will thus not be disturbed by this court. As a result, we find the trial court properly applied NMUJI 13.7 to the facts of this case.

The plaintiff argues, however, that even if NMUJI 13.7 is the appropriate instruction, it should not have been used by the trial court because it does not correctly state New Mexico law regarding trespassers. The plaintiff asserts that the jury instructions must be read along with the case law, and should not be applied when there is a conflict between the instruction and the case law. The plaintiff claims that under New Mexico case law it is clear that a landowner owes some degree of duty to a trespasser, at the very least the duty to refrain from willful or wanton conduct. The plaintiff further asserts that in the cause at bar, the Defendant owed the plaintiff the duty of ordinary care.

The plaintiff cites the case of *Latimer v. City of Clovis,* 83 N.M. 610, 495 P.2d 788 (Ct.App.1972), for the proposition that New Mexico recognizes two categories of trespassers. If a trespasser is undiscovered, the landowner owes no duty except to refrain from willful or wanton conduct. If, however, a trespasser is discovered or should have reasonably been anticipated, the landowner owes the duty of ordinary care. Plaintiff's Brief-in-Chief at 15.

The *Latimer* case was an attractive nuisance situation involving a five-year-old child who drowned when he fell into a fenced swimming pool at a city park. The fence had apparently been allowed to deteriorate and the child was able to crawl through a hole. The New Mexico Court of Appeals, relying on a uniform jury instruction, does state that a trespasser is owed the duty of ordinary care if their presence is discovered or should have been reasonably anticipated. The NMUJI relied upon by the *Latimer* court, however, were superseded by the instructions adopted in 1978 and which are relevant to the case at bar. In any event, the holding in *Latimer* was not based on the NMRUS, as it was not raised as a defense, and thus the same standard would not be applicable to the cause at bar.

If we were to adopt the plaintiff's argument that ordinary care is the correct standard in this case, it would virtually negate the protections accorded a landowner by the NMRUS. If a landowner opens his land to the public for recreational use, it is logical that the presence of trespassers would be reasonably anticipated, and thus, according to the plaintiff's rationale, *Latimer's* duty of ordinary care would apply. The New Mexico legislature has determined, however, that landowners who are generous enough to allow their private land to be used by the public without charge for recreation should be protected from lawsuits in case of injury. It would be inappropriate for this Court to eliminate that protection by holding the landowner to a different standard of care, and we decline to do so.

Although the plaintiff would obviously prefer that the *Latimer* standard of ordinary care apply in this area, he asserts that, at the very least, a willful and wanton standard should be implied in the NMRUS. While the plaintiff correctly states that the general rule in New Mexico and the majority of other jurisdictions is that a landowner is liable to a trespasser for injuries resulting from willful or wanton conduct, *Chavez v. Torlina*, 15 N.M. 53, 99 P. 690 (1909), the NMRUS does not contain a willful and wanton provision and jury instruction 13.7 specifically states that there is no duty owed. As the plaintiff himself points out, the New Mexico legislature declined to adopt the exception from immunity for willful and wanton conduct contained in the model recreational use statute adopted in many states. The plaintiff interprets the legislature's omission as a decision to employ a flexible standard of care, rather than prescribing the standard in the NMRUS itself. Thus, the plaintiff urges, the NMRUS could reflect any changes in the law regarding trespassers.

We agree with the contention of the defendant that the legislature had the option to include a willful and wanton provision in the NMRUS and chose not to do so. There is no indication that any liability of the landowner was intended. Answer brief of Appellee at 18. This conclusion is the most reasonable interpretation of the clear wording of the NMRUS, especially in light of the unequivocal language of jury instruction 13.7. If, as plaintiff claims, the New Mexico legislature actually intended the NMRUS to incorporate either the willful and wanton standard, or that of ordinary care, it is up to the legislature itself, not this Court, to take that step. Accordingly, the trial court's determination that a landowner owes no duty to a trespasser under the NMRUS is affirmed.

The plaintiff argued at the trial below and on appeal that even if the standard of care under the NMRUS was found to be willful and wanton, the failure of the United States to place warning signs in the Soda Dam area in light of the magnitude of the danger renders defendant liable under even that standard's strict requirements. The trial court disagreed, finding no evidence whatsoever of willful and wanton conduct. Because we do not find a willful and wanton standard to be incorporated in the NMRUS, we do not need to reach this issue. In any event, we would not disturb the trial court's ruling on this point considering the facts of this case.

The plaintiff makes the additional argument that, if faced with the question, the New Mexico Supreme Court would abrogate the common law distinctions between

invitees, licensees and trespassers because of the adoption of a pure comparative negligence system in 1981. *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981). The plaintiff states that some courts have found such common law distinctions to be incompatible with the theory of comparative negligence, but the plaintiff can provide no indication that New Mexico would be inclined to do so.

In fact, the jury instruction relied upon by the trial court as stating the applicable law in the cause at bar was reaffirmed by the New Mexico Supreme Court in the set of jury instructions adopted in 1987, after the adoption of comparative negligence in *Scott*. The New Mexico Supreme Court has thus apparently determined that status-based distinctions are not inherently incompatible with comparative negligence. Indeed, the common law distinction may, as in this case, determine whether there is any duty owed at all, and, if not, comparative negligence principles would not come into play. The decision of the trial court on this point was proper and is affirmed.

AFFIRMED.