2003-NMCA-086

71 P.3d 1281

**Jesus CELAYA, Plaintiff–Appellant,**

v.

**Lin HALL, Defendant–Appellee.**

No. 22,211.

Court of Appeals of New Mexico.

April 29, 2003.

Certiorari Granted, No. 28,076, June 25, 2003.

John Wayne Higgins, John Wayne Higgins & Associates, Albuquerque, NM, for Appellant.

Emily A. Franke, Paul T. Yarbrough, Butt, Thornton & Baehr, P.C., Albuquerque, NM, for Appellee.

*OPINION*

FRY, Judge.

{1} This case raises questions about the limits of immunity for public employees under the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (1976, as amended through 2001) (the Act), and requires us to clarify the circumstances under which a public employee acts within the scope of duties. The trial court granted summary judgment for Defendant, a volunteer chaplain for a county sheriff department, on the basis that he was a public employee acting within the

scope of his duties at the time of his alleged tortious conduct, and therefore Plaintiff's suit was barred by the two-year statute of limitations in the Tort Claims Act. The parties do not dispute that Plaintiff filed his claim against Defendant more than two years after the relevant incident. Because there are genuine factual questions regarding Defendant's status as a public employee, as well as the scope of his duties, we reverse summary judgment and remand to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

{2} Defendant Lin Hall volunteered as chaplain for the Bernalillo County Sheriff's Department (Department). The Department provided him a "take-home" vehicle to assist him in performing chaplain tasks. Defendant's volunteer work included providing spiritual counseling to crime victims and their families, as well as to individual sheriff's deputies. At times, Defendant also provided assistance to civilians " 'as needed' [and] within his discretion," for example, when he was driving the Department vehicle and he came upon a stranded motorist. During the same time period that he served as chaplain, Defendant also had a full-time, compensated position with an entity that was completely unrelated to the Department.

{3} At the time of the accident giving rise to this litigation, Plaintiff Jesus Celaya was sixteen years old and worked part-time for Wal–Mart gathering shopping carts in the store parking lot. In November 1996, Defendant was running a personal errand at the store where Plaintiff worked. Defendant was driving the Department vehicle in the parking lot when the car rolled over Plaintiff's foot.

{4} In October 1999, almost three years after the accident, Plaintiff filed a complaint against the County of Bernalillo (County), the Department, and Defendant for injuries he suffered as a result of the parking lot accident. The defendants filed a motion to dismiss based upon Plaintiff's failure to comply with the two-year statute of limitations in

Section 41–4–15 of the Act. On Plaintiff's motion, the trial court dismissed the claims against the County and the Department but allowed Plaintiff to file an amended complaint against Defendant. Plaintiff argued that at the time of the accident, Defendant was acting outside the scope of his volunteer duties and therefore was not covered by the Act. Defendant countered that he was acting within the scope of his duties as a Department employee so that the Act's statute of limitations barred the claims against him. The trial court granted Defendant's motion for summary judgment based upon Plaintiff's failure to file his action within the Act's statute of limitations. Plaintiff appeals.

## DISCUSSION

### Standard of Review

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We consider the facts in the light most " 'favorable to support a trial on the issues because the purpose of summary judgment is not to preclude a trial on the merits if a triable issue of fact exists.' " *Madsen v. Scott*, 1999–NMSC–042, ¶ 7, 128 N.M. 255, 992 P.2d 268 (quoting *Ruiz v. Garcia*, 115 N.M. 269, 271, 850 P.2d 972, 974 (1993)). The "party opposing a motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists." *Nat'l Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App. 1987). We review a grant of summary judgment de novo. *Self*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### Public Employee Status

{6} We first address whether Defendant met the Act's definition of "public employee." The Act defines "public employee" as "any officer, employee or servant of a governmental entity, excluding independent contractors." § 41–4–3(F). This definition is followed by an enumerated list of catego-

ries of persons who qualify as "public employees," a list that includes "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." § 41–4–3(F)(3). Thus, at first glance, "public employee" appears to include Defendant—both parties' factual accounts reflect that Defendant sometimes performed chaplain tasks on behalf of the Department. Plaintiff argues, however, that Defendant acted as an independent contractor when he performed the role of Department chaplain. The plain language of the Act excludes "independent contractors." § 41–4–3(F); *see also High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (setting out principles of statutory construction). We must therefore consider whether there is a genuine issue of fact whether Defendant was an independent contractor and therefore excluded from the Act.

{7} Courts generally look to agency law to distinguish employees from independent contractors. *See, e.g., Harger v. Structural Servs., Inc.,* 1996–NMSC–018, 121 N.M. 657, 664, 916 P.2d 1324, 1331 (adopting the Restatement (Second) of Agency Section 220 approach to identify an independent contractor for purposes of Workers Compensation Act); *Houghland v. Grant,* 119 N.M. 422, 426–27, 891 P.2d 563, 567–68 (Ct.App.1995) (utilizing agency law doctrine of apparent authority to determine whether emergency room doctor was an independent contractor for purpose of Tort Claims Act); *see also Madsen,* 1999–NMSC–042, ¶¶ 8–15, 128 N.M. 255, 992 P.2d 268 (applying agency principles to determine whether homeowner had employer-employee relationship with housesitter). We find relevant the well-established agency doctrine that an employer's actual control or right to control an individual carries great weight in determining whether the individual is an employee or an independent contractor. Restatement (Second) of Agency § 220 (1958); *Savinsky v. Bromley Group, Ltd.,* 106 N.M. 175, 176, 740 P.2d 1159, 1160 (Ct.App.1987); *see also Armijo v. Dep't of Health & Env't,* 108 N.M. 616, 620, 775 P.2d 1333, 1337 (Ct.App.1989) (considering lack of right to control as a factor in concluding that community mental health facility was not a state agency and its employees in Tort Claims Act context were not public employees). In most settings, the hallmark of an independent contractor is that "the person who engages the contractor may direct the result to be accomplished but does not have the right to control the manner in which the details of the work are to be performed." UJI 13–404 NMRA 2003. *But see Houghland,* 119 N.M. at 426, 891 P.2d at 567 (criticizing the right to control test as inappropriate in the context of hospital emergency rooms).

{8} Turning now to the specifics of this case, Plaintiff contends the Department had no control over the details of Defendant's work. According to Plaintiff, Defendant had sole discretion as to "whether, when and how" to provide chaplain-related services. To support his argument, Plaintiff relies on the affidavit of former Department Sheriff Ray Gallagher, which stated that the "Department does not control the manner in which the details of [Defendant's] work is performed." Defendant counters it is undisputed that a previous sheriff appointed him to the chaplain position, that he acted in an official capacity "on behalf of and in service of" the Department, that the acting sheriff supervised him at the time of the accident, that the Department provided him a vehicle and other equipment to do his job, and that he was on-call "at all times." Defendant submitted an affidavit from Sheriff Joe Bowdich, acting sheriff at the time of the accident, which states that Sheriff Bowdich supervised Defendant's "[c]haplain duties." These facts and affidavits do not definitively answer the question of whether the Department had the right to control the details of Defendant's work. Defendant argues that former Sheriff Gallagher's affidavit has no relevance and creates no issue of fact because Gallagher was not sheriff at the time of the accident. We disagree. The affidavit is relevant to whether the Department controlled Defendant's work in the past, which

in turn affects the analysis of the relationship between the Department and Defendant. *See* Restatement (Second) of Agency § 220(2)(i) (identifying "whether or not the parties believe they are creating the relation of master and servant" as a factor in distinguishing servant from independent contractor). There is a genuine issue of fact as to whether Defendant was an independent contractor because of the Department's lack of actual control over, or right to control, the details of his work. Although the right to control test may be subject to the same criticism in the context of voluntary chaplains as has been made in the context of emergency room doctors, *see Houghland*, 119 N.M. at 426, 891 P.2d at 567, we believe that it has a place in this case and that factual questions surround it. The finder of fact must resolve this dispute.

**Scope of Duties**

{9} Assuming without deciding that Defendant was a public employee, the Act's statute of limitations affords him no protection unless he was acting within the scope of his duties at the time of the accident. " 'duties' means performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance[.]" § 41–4–3(G). The Act's express definition of "scope of dut[y]" sets out a standard distinct from the common law scope of employment test. *Risk Mgmt. Div. v. McBrayer*, 2000–NMCA–104, ¶ 8, 129 N.M. 778, 14 P.3d 43; *Medina v. Fuller*, 1999–NMCA–011, ¶ 10, 126 N.M. 460, 971 P.2d 851.

{10} Relying on *Medina*, the trial court found that at the time of the accident Defendant was acting within the scope of his duties as a matter of law. The trial court did not articulate which undisputed facts it relied upon to reach this conclusion. [*Id.*] Documentary evidence submitted for the trial court's consideration included excerpts from Defendant's deposition testimony; the affidavits of Defendant, former Sheriff Gallagher, and Sheriff Bowdich; a 1988 letter from the

Department to Defendant that confirmed his appointment to the chaplain position but said nothing about the nature of his duties; Defendant's chaplain business card with the Department logo; and an undated departmental policy statement regarding the use of take-home vehicles in general. Defendant's affidavit stated that, at the time of the accident, he was monitoring the Department radio in his take-home vehicle so that he could immediately respond to a call, and that his Department pager was with him and turned on. In addition, he had his chaplain business cards in the vehicle to hand out at accident or crime scenes. Defendant admitted that he was at Wal–Mart on personal business, testifying that he shopped there three or four times each week. However, he could not remember why he was at Wal–Mart on that occasion, nor could he remember the Department business he may have performed that day or where he was right before the accident. Defendant stated that he occasionally stopped in a store to run a personal errand on the way to or from a chaplain assignment, but that he never drove the vehicle exclusively for personal use. According to Defendant, it was his "custom, routine and procedure to drive the vehicle only in connection with [my] Sheriff's Department chaplain duties" and, therefore, "I must have been engaged in some chaplain duties at some point on [the day of the accident], in order for me to have been driving the Department vehicle."

{11} The undisputed facts in *Medina* reflect crucial differences from the facts relied upon by Defendant. In *Medina*, the individual defendant was a deputy sheriff investigator assigned a take-home car for use in connection with her duties. *Id.* ¶ 11. After leaving work one day, she stopped at her husband's place of employment, started driving home, realized she had forgotten something, and was returning to her husband's office when she was involved in an accident with the plaintiff. *Id.* ¶ 2. The trial court granted summary judgment for defendant on the basis that she was acting within the scope of her duties at the time of the accident, and therefore she was protected by the

two-year statute of limitations in the Act. *Id.* ¶ 1. While acknowledging that scope of duties typically presents a factual question, this Court affirmed that the deputy sheriff in *Medina* was acting within the scope of her duties as a matter of law. *Id.* ¶¶ 22, 29. The opinion clarified that because on-call status alone does not place a public employee within the scope of duties, courts must consider on-call status combined with additional factors. *Id.* ¶¶ 15–20. Additional factors in *Medina* included two critical undisputed facts: first, the accident occurred within ten minutes of when the deputy left work and before she arrived home, a time frame considered by her employer to be part of her workday, *id.* ¶¶ 5, 21; and second, at the time of the injury-producing event, the deputy was obligated by departmental policy to respond to calls. *Id.* ¶¶ 4, 20.

{12} In contrast, here Defendant never established an insignificant time lapse between the time of the accident and his last known official acts prior to the accident. According to Defendant's affidavit, he must have been returning from official duties because it was his habit to use the take-home vehicle only in conjunction with official duties. However, for the purposes of summary judgment, habit evidence alone cannot establish that no material fact issues existed regarding what Defendant was doing at the time of the accident. *See Sanchez v. Shop Rite Foods*, 82 N.M. 369, 370, 482 P.2d 72, 73 (Ct.App.1971) (reversing summary judgment for defendants in slip and fall case because evidence that manager and staff customarily swept floor was insufficient to establish that someone swept floor on day of accident). Defendant could not recall anything about his most recent official acts. We are unaware of any New Mexico case indicating that habit evidence combined with lack of memory "is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 163, 848 P.2d 1086, 1090 (Ct.App.1993) (internal quotation marks and citation omitted).

{13} We recognize that Defendant did say that he "never" used the vehicle exclusively for personal use, and therefore there is slightly more than just habit evidence combined with lack of memory in this case. However, because the main thrust of Defendant's evidence is habit combined with lack of memory, we believe a reasonable fact finder could find against Defendant on the issue of whether he was in the scope of his duties at the time of the accident.

{14} Also in sharp contrast to *Medina*, here Defendant did not establish that he was required to respond to Department requests for chaplain assistance. Defendant claims that he was on-call twenty-four hours a day, seven days a week, and evidence such as his business cards indicates that he was equipped to respond to Department calls. Readiness to respond, however, does not establish an obligation to respond. Defendant presented no evidence of an employment contract or a Department policy requiring him to comply with requests for chaplain assistance. Moreover, it is undisputed that Defendant had a full-time, paid position unrelated to his work for the Department, and thus logic prohibits the conclusion that he was obligated to respond to Department requests as a matter of law. Of course, the Act's definition of "scope of duties" extends beyond activities required by a government agency to include those tasks an employee is permitted or authorized to perform. That Defendant was not, as a matter of law, required to respond to the Department does not ultimately determine whether he was covered by the Act. Rather, the absence of such an obligation distinguishes Defendant's case from *Medina*, thereby undermining his prima facie case for summary judgment. Defendant never established the requisite prima facie showing for summary judgment because he failed to establish that at the time of the accident he was performing actions that he was requested, required, or authorized to perform. Consequently, Plaintiff had no obligation to introduce evidence of disputed material facts in order to avoid summary judgment. *Sanchez*, 82 N.M. at 370, 482

P.2d at 73. Accordingly, the trial court erred in ruling for Defendant.

## CONCLUSION

{15} For the foregoing reasons, we reverse summary judgment and remand to the trial court for further proceedings consistent with this opinion.

{16} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.